## Frey, Executor, v. Long et al., Administrators.

*Courts—Jurisdiction—Person—Subject-matter.*

1. Want of jurisdiction of the subject-matter may be taken advantage of at any stage of the cause.

2. Such right may be waived in questions of jurisdiction of the party defendant, but it can be taken advantage of at any time when it is a question of jurisdiction of the subject-matter.

*Courts—Jurisdiction—Orphans' Court or Common Pleas—Practice, C. P. —Acts of May 14, 1915, P. L. 483, and March 5, 1925, P. L. 23.*

3. Where, in a suit brought by the executor of a deceased wife, who was executrix of her husband's estate, against an administrator *d. b. n. c. t. a.* of her husband to recover a sum of money claimed as having passed to the widow under her husband's will, an affidavit of defence is filed to the jurisdiction, the court will consider the affidavit as equivalent to a petition and rule, as provided by the Act of March 5, 1925, P. L. 23, to determine questions of jurisdiction *in limine.*

4. In such case, as the jurisdiction of both the person and the subject-matter is in question, and as the Act of June 7, 1917, P. L. 363, gives to the Orphans' Court exclusive jurisdiction of the controversy, the suit in the Common Pleas will be stricken from the record.

Affidavit raising question of jurisdiction under the Act of March 5, 1925, P. L. 23. C. P. Franklin Co., Oct. T., 1924, No. 44.

*D. Edward Long* and *Edmund C. Wingerd,* for defendant.

*John W. Hoke,* contra.

DAVISON, P. J., April 7, 1926.—An action of *assumpsit*, to No. 44 of October Term, 1924, was brought by George M. Frey, executor of the last will and testament of Rebecca S. Crawford, deceased, *versus* D. Edward Long and Charles O. Clugston, administrators *de bonis non cum testamento annexo* of the estate of Milton Crawford, deceased. It appears from the plaintiff's statement of claim filed in said matter that said Milton Crawford and said Rebecca S. Crawford were husband and wife; that said Milton Crawford died first; that in and by his last will and testament, after his death duly probated, he provided, *inter alia,* as follows:

"I give, bequeath and devise to my beloved wife, Rebecca S. Crawford, all my estate and property, real, personal and mixed, for and during the term of her natural life, she to have, receive and enjoy all the income thereof for the aforesaid period, and if such income, in her opinion, is not sufficient for her comfortable support, she shall have the right and privilege, in her discretion, to use and expend any portion of the personal property, such as cash on hand or proceeds of grain or farm produce sold, stocks or other securities, or money derived from the sale of any personal property. But this privilege shall not authorize her to expend or encumber the real estate."

That said Rebecca S. Crawford was named as executrix in said will and letters testamentary were duly issued to her; that she carried a checking account in the Valley National Bank of Chambersburg in the name of "Rebecca S. Crawford, executrix of Milton Crawford;" that when she died on Nov. 18, 1923, that deposit amounted to $410.66; that, after her death, letters of administration *de bonis non cum testamento annexo* were issued to said D. Edward Long and Charles O. Clugston, the defendants in said suit; that on Jan. 19, 1924, said administrators *de bonis non cum testamento annexo* withdrew from said Valley National Bank said sum of $410.66; that said plaintiff claims the same as the property of his decedent, and this suit was brought for its recovery.

An affidavit of defence was filed Sept. 18, 1924, wherein said sum of $410.66 is claimed by said defendants as part of the estate of their decedent, Milton

Crawford, and the case was placed on the trial list for trial both in December Term, 1925, and February Term, 1926, but it was continued both times before called for trial. On Jan. 26, 1926, an affidavit to the jurisdiction was filed in said matter by said defendants, setting forth that, as both the estate of Rebecca S. Crawford and the estate of Milton Crawford, plaintiff's and defendants' decedents respectively, were in process of settlement in the Orphans' Court of Franklin County, that court had exclusive jurisdiction of the matter in dispute, and praying judgment whether the Court of Common Pleas would have further cognizance of the suit. On this affidavit a rule was granted by the court on that day, returnable on Feb. 25, 1926, on said plaintiff to show cause why the prayer of said defendants should not be granted, and issuing and service of the same was duly waived by the plaintiff's counsel. No answer was filed to said rule, and we are now asked to make the same absolute and to dismiss the said suit for lack of jurisdiction in the Court of Common Pleas to hear and determine the same.

Three questions arise for our determination: (1) Was the question of jurisdiction raised in time or was the right to raise it waived by the filing of the affidavit of defence to the merits of the case? (2) If raised in time, was it properly raised by the affidavit to the jurisdiction? (3) If properly raised and in proper time, has the Orphans' Court exclusive jurisdiction under the circumstances of this case?

First. When a question of jurisdiction arises it is necessary to inquire whether it is one of jurisdiction of the person or of the subject-matter. If lack of jurisdiction of the person is alleged, this may be waived by consent and acquiescence and a general appearance, or the filing of an affidavit of defence to the merits without reserving the right to question the jurisdiction of the court might be such an acquiescence as would bar the defendant from raising this question after such appearance or affidavit of defence filed. But when the allegation is to want of jurisdiction of the subject-matter, it may be taken advantage of at any stage of the case: McConkey v. Peach Bottom Slate Co., 14 Pa. C. C. Reps. 514. Consent may give jurisdiction of the person but not of the subject-matter: Wright v. Millikin, 152 Pa. 507; Com. v. Barnett, 199 Pa. 177. If, therefore, the plea is that the court had no jurisdiction of the subject-matter, then no consent can confer that jurisdiction, and the filing of an affidavit of defence to the merits would not act as a waiver of the right of the defendant to raise the question of jurisdiction at any time. The general rule is that want of jurisdiction may be taken advantage of at any stage of the cause: Simpson's Estate, 253 Pa. 217; Black's Executors v. Black's Executors, 34 Pa. 354; Fowler v. Eddy, 110 Pa. 120; Musselman's Appeal, 101 Pa. 165. And while this right may be waived in questions of jurisdiction of the party defendant, it can be taken advantage of at any time when it is a question of jurisdiction of the subject-matter. In the instant case the question of jurisdiction raised is not only as to the person of the parties to the suit, but also as to the subject-matter. Hence, the filing of the affidavit of defence and any other steps taken in the suit would not oust the right to raise this question at the time it was raised.

Two. The Practice Act of May 14, 1915, P. L. 483, does not apply to raising questions of jurisdiction for decision by the court. This act, as well as the Act of 1887, was intended to deal only with matters of form; matters of substance and the fundamental principles of pleadings are in no wise affected by it: Durkin v. Beshlin, 1 D. & C. 649. The legislature evidently recognized the difficulties which are constantly arising as to the proper method of raising questions of jurisdiction under the various Acts of Assembly of Penn-

sylvania, and particularly since the passage of the Act of 1915; and in 1925, by Act approved March 5, P. L. 23, it was enacted:

"Section 1. That wherever in any proceeding at law or in equity the question of jurisdiction over the defendant, or of the cause of action for which suit is brought, is raised in the court of first instance, it shall be preliminarily determined by the court upon the pleadings or with depositions, as the case may require; and the decision may be appealed to the Supreme Court or the Superior Court, as in cases of final judgments.

"Section 2. All such preliminary questions shall be raised by petition setting forth the facts relied upon, whereupon a rule to show cause shall be granted, and such preliminary question disposed of by the court. Such procedure shall be deemed *de bene esse* only and shall not operate as a general appearance."

Thus, it will be seen that the proper way to raise a question of jurisdiction as is here raised is by petition and rule and the disposition of this question by the court before any further steps are taken in the suit. In this case we have filed here what is termed an affidavit to the jurisdiction, but as it is, to all intents and purposes, a petition raising the question of jurisdiction, properly signed and sworn to by one of the defendants, and as on it a rule was granted to show cause and all the steps provided for in that act done, we will treat this as a petition filed under that act, and, therefore, find that this question of jurisdiction was properly raised by the defendants and is now before us for disposition, with the right of appeal from that decision, as provided in said Act of 1925.

Three. The Orphans' Court Act of June 7, 1917, P. L. 363, provides as follows:

"Section 9. The jurisdiction of the several Orphans' Courts, whether separate or otherwise, shall extend to and embrace:

"(d) The control, removal and discharge of executors and administrators deriving their authority from the register of the respective county, and the settlement of their accounts.

"(e) The distribution of the assets and surplusage of the estates of decedents among creditors and others interested.

.    .    .    .    .    .    .    .    .    .    .    .    .

"(l) All cases within their respective counties, wherein executors, administrators, guardians, or trustees may be possessed of, or are in any way accountable for, any real or personal estate of a decedent."

These provisions are exactly those of the law prior to the passage of the Act of 1917, being the Act of 1836, except that the word "control" in clause (d) is new. Thus, the jurisdiction of the Orphans' Court was not changed or modified by the later act, except as it was enlarged by the word "control" therein.

It had been held in Tyson v. Rittenhouse, 186 Pa. 137, that under a state of facts similar to those in the instant case, the Orphans' Court had exclusive jurisdiction. In that case the widow of Charles Tyson, Mary Tyson, claimed she had an absolute estate in all her husband's estate under his will, and by her will she attempted to dispose of all his estate. The surviving executor of the husband's estate sought to recover from the executors of the wife's estate by bill in equity in the Court of Common Pleas the estate which would pass under her control by the will of her husband. On demurrer to the jurisdiction of the Court of Common Pleas, the court sustained the demurrer and dismissed the bill, saying in part: "We are of opinion that the Orphans' Court has exclusive jurisdiction of the matter alleged in the bill. The whole controversy arises from the interpretation of the will of Charles Tyson. The

estate of the testator is before the Orphans' Court. The surviving executor is endeavoring to administer it, and the construction of the will is especially entrusted to the Orphans' Court. The rival claimants to the property in dispute are also in the Orphans' Court. The court has control over the executors of Mary Tyson as well as over the surviving executor of Charles Tyson. Why seek the aid of another court when the parties and subject-matter are peculiarly within the control of the Orphans' Court? Whether these bonds, stocks and lands belong to the estate of Charles Tyson can be determined by the Orphans' Court. The Orphans' Court alone has the authority to ascertain the amount of the decedent's property and order its distribution among those entitled to it: Phillips's Admin'r v. Railroad Co., 107 Pa. 465. This property belongs to the husband's estate or to the widow's estate, and both estates are in process of settlement in the Orphans' Court, and all matters arising in the distribution must come under the jurisdiction of the Orphans' Court." The Supreme Court, in affirming, said: "The question of jurisdiction appears to have been carefully considered and correctly decided. We have no doubt as to the correctness of the conclusion reached by the learned President of the Common Pleas." See, also, Tyson's Estate, 191 Pa. 218.

In Williams's Estate, 236 Pa. 259, the authorities as to the jurisdiction of the Orphans' Court are collected by the Supreme Court and very fully discussed, and the jurisdiction of that court in cases such as the one at bar fully sustained. The distinction there pointed out is that if the disputed property has never been within the grasp of the Orphans' Court, but is in the possession of one claiming adversely to the estate, the Orphans' Court does not have jurisdiction of the subject-matter; otherwise, it has.

In Schadt's Estate, 282 Pa. 523, a case decided since the passage of the Act of 1917, where the administrator cum testamento annexo of the estate of Catherine Schadt, deceased, filed a petition in the Orphans' Court against the executrix of the will of Charles H. Schadt, deceased, for an accounting of moneys received by that decedent as attorney-in-fact for the surviving executor of the will of said Catherine Schadt, said executor himself deceased, the court held that the Orphans' Court had jurisdiction, and the Supreme Court affirmed this conclusion. The Supreme Court there said: "Petitioner is an administrator and respondent an executor; both are accountable to and under the control of the same Orphans' Court; the debts due by one estate are ascertainable by that court and payable to whomsoever it shall direct; the assets due to, and which were, or should have been, received by the other, are distributable under the authority of that court. 'The settlement of [both of] their accounts' is committed to the same court, . . . which, as shown above, is vested with all other powers needful to the doing of anything which is or may be hereafter required or permitted to be done in said court, whether incidental to the powers hereinbefore enumerated or in addition thereto.'"

In Mauser v. Lerch et al., 7 D. & C. 242, Judge Reno, in a well-considered opinion, construed the jurisdiction and powers of the Orphans' Courts since the passage of the Act of 1917, and dissolved a preliminary injunction because the estate already was in process of administration in the Orphans' Court, and, therefore, the Court of Common Pleas could not take cognizance of the cause.

In the case at bar, the plaintiff being an executor of the estate now under the control of the Orphans' Court of this county, and the defendants being administrators of the estate under like control, the parties and the subject-matter are both peculiarly within the jurisdiction of that court. That court, under the Act of 1915, has full control of the settlement of the accounts of

both of the parties and the distribution of the assets and surplusage of both estates among creditors and others interested, and, having full jurisdiction also of all cases wherein executors or administrators may be possessed of, or in any way accountable for, any real or personal estate of the decedent, there could be no reason to call in the aid of another court to do that which said court has full and exclusive power to do. Being, therefore, of the opinion that the jurisdiction of the Orphans' Court in the instant case is exclusive, we are obliged to hold that the Court of Common Pleas cannot take cognizance of the cause and that the case must be stricken from the docket.

Now, therefore, April 7, 1926, rule granted on Jan. 26, 1926, is made absolute and the above entitled suit is stricken from the records, at cost of plaintiff.

From King Alexander, Chambersburg, Pa.