## Fayette County Controller's Report

Before Bane, P. J., and Dumbauld and Munson, JJ.

*Anthony Cavalcante*, for petitioners.

*Thomas P. Ruane, Jr.*, for respondents.

BANE, P. J., November 5, 1959.—This matter comes before the court on motions to strike "Permission to Appeal from the Controller's Report" and to strike "Exceptions to Report of Controller".

On January 30, 1959, the Fayette County Controller filed his forty-eighth annual report of the fiscal affairs of Fayette County for the year ending December 31, 1958. On April 30, 1959, the last day upon which an appeal from said report could be taken by taxpayers under the provisions of section 2805 of The County Code of August 9, 1955, P. L. 323, 16 PS §2805, no appeal having theretofore been taken by any county official as authorized by 16 PS §1731, 12 taxpayers presented to the late President Judge W. Russell Carr a petition seeking permission to appeal from the report. To this petition is appended the order signed by Judge Carr, as follows:

"AND NOW, APRIL 30, 1959 the foregoing PETITION is presented to this Court and after considering the same the permission therein prayed for to appeal from the Report of the Controller of Fayette County filed at No. 458 December Term 1958 is hereby *permitted.*"

It is noted that the last word in said order, "permitted," is written in ink in his own handwriting by Judge Carr, and that the order by its terms did not purport to extend the time in which an appeal might be taken from the controller's report. It is further noted that no recognizance, specification of errors to be urged or any other document accompanied the "Petition by Taxpayers" filed on April 30, 1959.

More than a month later, specifically on June 5, 1959, a paper entitled "Exceptions to Report of Controller" was filed, elaborating under nine heads the respects in which the 12 taxpayers considered the report to be objectionable. With this paper was filed another instrument entitled "Petitioner's Recogni-

zance". This instrument was signed by the same persons who signed the "Petition by Taxpayers," and was acknowledged on April 30, 1959, before Madeline P. John, a notary public employed in the office of Anthony Cavalcante, Esq., a member of the Fayette County bar, who appears in this proceeding as counsel for petitioners and who also signed the purported recognizance as one of the two sureties. Fred J. Kemp, one of the signers of both the "Petition by Taxpayers" and the "Recognizance," died on May 1, 1959. No other documents were filed and no other relevant facts occurred before the controller's counsel filed, on June 18, 1959, the foregoing motions to strike.

The question before us for decision is, therefore, whether the acts done by petitioners, as heretofore set forth, do or do not, as a matter of law, constitute the taking of a valid appeal. Until it first be decided that an appeal from the controller's report has been properly and validly taken, this court cannot review on the merits the propriety of the challenged items of the controller's report.

The court's jurisdiction of appeals from the controller's report is conferred by section 2805 of The County Code of August 9, 1955, P. L. 323, 16 PS §2805, which provides that:

"Subject to the proviso hereinafter made, any ten or more taxpayers of the county may, in behalf of such county, appeal from the report of its . . . controller to the Court of Common Pleas. . . . If no appeal is entered by county officials, the appeal by such taxpayers shall be entered within ninety days after the filing of such report in the Court of Common Pleas. All of the appellants shall enter into recognizance with two sufficient sureties, conditioned that the appellants shall prosecute said appeal with effect and pay all costs that may accrue thereon in case they fail to obtain a final decision more favorable to the county than

the report from which such appeal is taken. In all such appeals, the Courts of Common Pleas may direct an issue to be tried by a jury, upon whose verdict final judgment shall be entered, reserving the right of all parties to appeal to the Supreme Court or Superior Court, as provided in other appeals."

Being fully cognizant of the rule set forth in that line of cases (In re Auditor's Report, 245 Pa. 17; Appeal from Report of Auditors of Dunmore School District, 262 Pa. 322; and Unangst's Appeal, 333 Pa. 489), which holds that when taxpayers are compelled to invoke the authority of the act to secure an investigation of the official conduct of public officers charged with the administration of the fiscal affairs of the county, the court should not be astute in finding technical reasons to defeat the purpose, let us proceed to an examination of the instruments before us for the purpose of determining whether they, even under the guise of judicial liberality, may be construed as constituting an "appeal". In order to so hold, since they filed no paper designated as an "Appeal from Controller's Report," or containing the words normally used for that purpose, "Come now . . . and appeal from the Report of the Controller of Fayette County", we must be able to conclude that their paper entitled "Petition by Taxpayers" is susceptible of being deemed and treated as an appeal.

The petition is entitled "Petition by Taxpayers." It states that the signers are all taxpayers and residents of Fayette County, and that "they *wish* to take an appeal on behalf of the County to the Report of the County Controller." In the next two paragraphs petitioners declare that they "believe that injustice will be done the County unless they are *permitted* to take said appeal." The petition then concludes with the prayer "to *permit* the filing of this Petition." The verification by one Charles O. Dean, one of petitioners,

deposes and says "that the facts set forth in the foregoing PETITION are true and correct, and that the Petitioners believe that injustice will be done the County unless they are *permitted* to file the said Appeal."

It will be noted that this document is called a "Petition" in its heading, as well as in its prayer, and that in the verification the word "PETITION" appears in emphatic capitals. It is nowhere called an appeal, nor does it say in its body that the taxpayers appeal from the controller's report. It merely says that they "wish" to take an appeal. The prayer of the petition is to permit the filing of the petition, not even to permit the taking of an appeal. The verification also discloses their belief that injustice will be done unless they are permitted to file the said appeal, namely, the appeal which paragraph 2 of the petition says "they wish to take."

It is thus plain that the presentation and filing of this paper cannot possibly, by its terms, be construed as an appeal. To do so would contradict the entire tenor, intent and contents of the document itself. This interpretation is confirmed by the wording of the order signed by Judge Carr. His language is patently clear that it grants nothing more than permission to appeal. It merely says that the permission to "appeal" prayed for in the petition is "permitted." It states no opinion or implication that the legal effect of the filing of the petition and order will constitute the taking of an appeal. The document was an "ex parte" proceeding, and no formal notice thereof was provided for or given to the county controller or the county commissioners. The law empowers only taxpayers to appeal; the court cannot appeal for them. The statute requires that they in fact "appeal" in order to give the court jurisdiction to review the merits of the challenges asserted against the controller's report. Why the instant pleading was

prepared and submitted in its existing form, and not in the manner prescribed by statute, defies reasonable understanding. The taxpayers are given the right, by statute, to appeal, and no permission from the court is required in order to do so. The fact that the taxpayers took this unnecessary step does not relieve them from the necessity of taking the indispensable step which the statute requires of them. In short, however liberal we might wish to be, by way of judicial interpretation, it is impossible to construe the instant pleading as constituting a valid statutory appeal. To do so would violate the statutory mandates which we are required to uphold and would be in contradiction of the entire context and tenor of the instrument itself, which so clearly spells out the "wish" of the taxpayers.

Passing now to the matter of the recognizance filed on June 5, 1959, more than a month after the "permission" was granted "to appeal," we find that when it was filed, one signer was deceased. It was not, as required by law, an instrument entered into by *all*, not merely some, of the purported appellants. Such recognizance is an integral part of the appeal. It is a "basic procedural requirement," and its absence is fatal: Susquehanna Company Auditors' Report, 123 Pa. Superior Ct. 195, 201. It was necessarily essential that it be filed with and at the time of the taking of the alleged appeal. This was not done. Since *all* appellants were not signers and legally bound thereby at the time of its filing, we are confronted with a situation which concerns not a *defective* recognizance, but one involving no recognizance at all.

In Mayo's Appeal, 315 Pa. 269, 271, the Supreme Court affirmed the dismissal of taxpayers' appeal where there were 28 appellants, but only 10 signed the bond. The court there emphasized that: "The reasons invoked in the present case to frustrate the appeal of the taxpayers are not technical but substantial and

are so obvious that they do not require 'finding'. The filing by appealing taxpayers, of a recognizance in manner and form prescribed by section 1035 is one of the chief props of their right to appeal from the auditors' report. This prop appellants must supply; it cannot be supplied by judicial 'liberality' ". See also Monroe County Auditors' Report, 319 Pa. 63; and Werner Appeal, 173 Pa. Superior Ct. 242.

In the Mayo case the Supreme Court cited election contest proceedings as analogous, and in McChesney's Contested Election, 326 Pa., 438, 441, the Court said: "The filing of a bond which conforms to the requirements of the Act of Assembly and within the time prescribed is a condition precedent not only of the petitioners' right to proceed with the election contest, but also of the court's jurisdiction to hear and determine the contest."

It is to be further noted that the instrument filed on June 5, 1959, entitled "Petitioners' Recognizance," was defective in that it was entered into before a notary public and not before the court (see 2 Blackstone, Commentaries on the Laws of England, p. 802; McMicken v. Commonwealth, 58 Pa. 213), and that without "leave of court for special cause shown," one of the sureties was Anthony Cavalcante, a member of the Fayette County bar, and that the instrument therefore violated rule 81 of the rules of this court, which prohibits attorneys from acting in that capacity in proceedings pending in this court.

We may therefore only conclude that the instant proceeding must be dismissed and respondent's motions to strike sustained. To hold otherwise implies our willingness to accept, by way of judicial "liberality," pleadings which are not in accordance with the provisions of the acts of assembly so made and provided. On appeal, the appellate court could hold with equal

reasonableness that this court was without jurisdiction thereby. If the alleged issues must be resolved, we prefer that there be no question as to the validity and sufficiency of the pleadings in the first instance.

We are concerned, of course, with a motion which asserts, on the one hand, that the taxpayers' actions are motivated by "personal political spiteful purposes," while, on the other, it is contended that the controller's report is on its face "pregnant with fraud" and "designedly composed to deceive the taxpayers of Fayette County." We may only suggest to the controller and the commissioners that serious thought and consideration be given to the installation of a complete, adequate and proper accounting system so that no implication or innuendo may hereafter arise in connection with the handling of the county's finances. We may only further suggest to the alleged appealing taxpayers that they review and reëvaluate their present position in light of the criminal trials which so recently occupied much of this court's time. Many of the issues attempted to be raised in the instant proceedings were fully covered in those trials. After such reëvaluation, if it then be determined the issues are of such serious nature as to warrant further court proceedings, we will entertain a petition on behalf of said taxpayers to permit an appeal nunc pro tunc. The authorities indicate that a controller's report has the effect and conclusiveness of a judgment, but that where equitable considerations exist that would warrant opening the judgment of a court of record, an appeal nunc pro tunc may be allowed: Zeigler's Petition, 207 Pa. 131; O'Gara v. Phillips, 297 Pa. 526; Unangst's Appeal, 333 Pa. 489; Fayette County Auditors, 30 Pa. C. C. 333. Such an appeal nunc pro tunc was allowed by this court in Fayette County v. Aubrey, 36 D. & C. 307; Commonwealth v. Keirsted, 340 Pa. 512.

For the foregoing reasons, we make the following

*Order*

And now, November 5, 1959, upon and after due consideration, and for the reasons fully set forth herein, the motions to strike permission to appeal from the controller's report and to strike exceptions to report of controller are sustained, the "Petition by Taxpayers" and "Exceptions to Controller's Report" are dismissed, and the alleged appeal is hereby quashed.

It is further ordered and directed that the taxpayers, should they so desire, may, within 30 days from the date of this order, file with this court a petition to allow an appeal nunc pro tunc.